UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 96-16th STREET, LLC<br><br>    Plaintiff,<br><br>- against -<br><br>PENN-STAR INSURANCE COMPANY,<br><br>    Defendant. | Case No. 1:24-cv-01064<br><br>**COMPLAINT** |

Plaintiff 96-16th Street, LLC ("96-16"), owner of a development in Brooklyn, brings this action against its insurer, Penn-Star Insurance Company ("Penn-Star"), following the insurer's wrongful denial of its contractual obligation to defend and indemnify 96-16 in a personal injury lawsuit filed by a third-party against 96-16 in the Supreme Court of New York, Kings County.

That denial has resulted in 96-16 expending significant sums defending the Kings County lawsuit. As Penn-Star's insured, Plaintiff should not have to spend these sums, and thus turns to this Court for relief.

## **PARTIES**

1. Plaintiff 96-16th Street, LLC is a New York LLC headquartered and operating in New York, New York, its principal place of business, and is the owner of a site located at 96 16th Street in Brooklyn.

2. Plaintiff's sole member is Spazio Urbano, LLC, a New York LLC headquartered and operating in New York, New York, its principal place of business.

3. Spazio Urbano, LLC, in turn has the following members, all residents and domiciliaries of New Jersey, Florida, and California:

1

      i.    Jorge Mastropietro, an individual and a resident and domiciliary of New Jersey.

      ii.    Carolina Garcia Paris, an individual and a resident and domiciliary of New Jersey.

      iii.    Anish Karyat, an individual and a resident and domiciliary of New Jersey.

      iv.    Eric Sevilla, an individual and a resident and domiciliary of Florida.

      v.    Guillermo Szabo, an individual and a resident and domiciliary of Florida.

      vi.    Daniel Ehrlich, an individual and a resident and domiciliary of Florida.

      vii.    Bemnet Kibreab, an individual and a resident and domiciliary of California.

      viii.    Biniam Kibreab, an individual and a resident and domiciliary of California.

      ix.    Marina Martin, an individual and a resident and domiciliary of Florida.

      x.    Dawit Kibreab, an individual and a resident and domiciliary of New Jersey.

4.    Upon information and belief, Defendant Penn-Star Insurance Company is a corporation organized under the laws of Pennsylvania, with its principal place of business located in Pennsylvania.

**JURISDICTION AND VENUE**

5.    This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000.00, and the matter is between citizens of different states.

6. Venue is appropriate in the Southern District of New York because Plaintiff is a domiciliary of this district, and because many of the events relevant to this matter took place in this district.

## FACTS

### *96-16 is Named as Defendant in the Kings County Action*

7. 96-16 is the owner of a residential property located at 96-16th Street in Brooklyn, New York (the "Project"), that was being developed by Hyper Structure Corp. ("Hyper Structure"), a general contractor which 96-16 retained.

8. Hyper Structure, in turn, retained various subcontractors, including, on information and belief, Atlas NY Construction Corp. ("Atlas").

9. The Project was approved as a condominium by the New York State Real Estate Finance Bureau on or about April 10, 2020.

10. In October 2020, together with Hyper Structure, 96-16 was named as a defendant in a personal injury action brought in the Supreme Court of New York, Kings County by Sukhwinder Singh, an employee of Atlas (the "Kings County Action"). In this action, Singh alleged that on or about March 21, 2020, he was severely injured while working on the Project when he fell from a scaffold.

11. Shortly after learning that it was a defendant in the lawsuit, 96-16 properly provided notice of the action to Penn-Star, its insurer under a commercial general liability policy, no. PAV0200859 (the "Policy"), that was in place at the time of Singh's alleged injury in March 2020, and properly requested coverage under that Policy.

*Pursuant to the Policy, Penn-Star is Obligated to Defend and Indemnify 96-16 in the Kings County Action*

12. Under the Policy's Section I, Coverages A (Bodily Injury and Property Damage Liability), and as modified by an applicable endorsement, Penn-Star agreed as follows, in relevant part:

> i. "We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."; and
>
> ii. "We will have the right and duty to defend the insured against any 'suit' seeking those damages [i.e., damages for bodily injury' or 'property damage'] even if the allegations of the 'suit' are groundless, false or fraudulent."

13. The Policy's definitions section, Section V, defined "bodily injury," as one would expect, as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

14. Further, in that same definitions section, "suit" was defined, in relevant part, as "a civil proceeding in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."

15. The Kings County Action plainly triggered Penn-Star's obligations under the Policy. In that civil proceeding, plaintiff alleged that, when he was working on the Project, he fell "when the scaffold he was working on collapsed, and that as a result of such impact and subsequent fall, [he] suffered severe physical injuries . . .," for which he sought compensation. Thus, there is no question that in the Kings County Action, Singh seeks bodily injury damages against 96-16, the insured under the Policy.

16. Yet, to Plaintiff's chagrin, by letter dated June 18, 2021, Penn-Star wrongly denied coverage and disclaimed any obligation to defend or indemnify 96-16 in the Kings County Action (the "Coverage Denial Letter"), citing the Policy's four coverage exclusions – the Contracted Persons Exclusion, the Independent Contractors Exclusion, the Condominium Exclusion, and the Height Exclusion.  All of Penn-Star's four stated grounds for denying coverage to 96-16 were and are legally and factually meritless.

### *The Contracted Persons Exclusion Cannot Justify Penn-Star's Denial of Coverage*

17. <u>First</u>, in its Coverage Denial Letter, Penn-Star claims that the Policy's Contracted Persons Exclusion excludes coverage for "bodily injury" loss sustained by a person who (among other things) was employed by any organization that "[c]ontracted with others on any insured's behalf for services" and who sustained injuries "in the course of employment by that organization."

18. Singh, the plaintiff in the Kings County Action, alleges that he was employed by Atlas, a subcontractor on the Project, which contracted with Hyper Structure, the Project's general contractor.

19. In its Coverage Denial Letter, Penn-Star claims that the Contracted Persons Exclusion applies, because Singh "was employed by Atlas, which contracted with Hyper [Structure] for services on behalf of the owner of the [P]roject, [96-16]" and allegedly sustained injuries while working for Atlas.

20.  Penn-Star's reasoning constitutes a misreading of the Policy's Contracted Persons Exclusion, because there is no evidence that Atlas, a subcontractor, ever contracted with Hyper Structure "on behalf of 96-16," or at 96-16's direction or request, or that 96-16 was even aware that Hyper Structure had retained Atlas at the time of such retention.

21. Further, Penn-Star claims that the Policy's Contracted Persons Exclusion applies for the additional reason that it excludes coverage for "bodily injury" sustained by a person "performing work that any insured has the authority to control or supervise." But 96-16 never had the authority to control or supervise the work of Singh, an employee of its general contractor's subcontractor, and there is no basis to suggest otherwise.

### *The Independent Contractors Exclusion Cannot Justify Penn-Star's Denial of Coverage*

22. <u>Second</u>, in its Coverage Denial Letter, Penn-Star claims that the Policy's Independent Contractors Exclusion excludes coverage for "bodily injury" sustained by, in relevant part, "any independent contractor or sub-contactor" of 96-16.

23. In its Coverage Denial Letter, Penn-Star claims that the Independent Contractors Exclusion applies, because "Atlas was [Plaintiff's] independent contractor."

24. However, there is no evidence that Singh (or Atlas, his alleged employer) ever acted as 96-16's independent contractor or subcontractor.

### *The Condominium Exclusion Cannot Justify Penn-Star's Denial of Coverage*

25. <u>Third</u>, in its Coverage Denial Letter, Penn-Star claims that the Policy's Condominium Exclusion excludes "bodily injury" arising out of, among other things, work that is "part of or is incorporated into any 'condominium'" and similar development "and any such structure qualifies as 'newly built.'"

26. In its Coverage Denial Letter, Penn-Star claims that the Condominium Exclusion applies, because the Project involved the construction of a new condominium.

27. However, to the extent that 96-16 (as opposed to Hyper Structure, its general contractor) could even be deemed to have "worked" on the Project, at the time when Singh allegedly sustained his injury – that is, March 21, 2020 – the Project had not yet been approved

as a condominium, with that approval taking place only on April 10, 2020. Thus, the Condominium Exclusion does not apply to Singh's injuries and the Kings County Litigation.

### *The Height Exclusion Cannot Justify Penn-Star's Denial of Coverage*

28. <u>Fourth</u>, in its Coverage Denial Letter, Penn-Star claims that the Policy's Height Exclusion excludes "bodily injury" arising out of, among other things, operations performed "on the exterior of any building or structure above a ground height of 60 feet."

29. In its Coverage Denial Letter, Penn-Star claims that the Height Exclusion applies "to the extent the subject building's height is above a ground height of 60 feet . . .".

30. However, the Height Exclusion does not apply, because there is no evidence that Singh's alleged "bodily injury" stemmed from work performed above a ground height of 60 feet.

31. In sum, Penn-Star's refusal to acknowledge its duty to defend and indemnify 96-16 in the Kings County Action is contrary to the Policy and has no basis in the law.

32. To date, Penn-Star has failed and refused to assume the defense of 96-16 in the Kings County Action.

33. As a result of Penn-Star's wrongful failure to provide 96-16 with a defense in the Kings County Action, 96-16 has been forced to defend itself in that litigation, and has sustained costs, expenses and damages in an amount to be determined at trial, but no less than $75,001.00.

## COUNT ONE

### Declaration of Penn-Star's Duty to Defend and Indemnify

34. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

35. Despite Plaintiff's demand for a defense and indemnification in the Kings County Action, Penn-Star has failed and refused to defend Plaintiff, and has disclaimed any duty to

defend and indemnify it, in breach of its obligations under the Policy.

36. Defendant's failure to defend Plaintiff in the Kings County Action violates the Policy and the law.

37. Further, in its Coverage Denial Letter, Penn-Star wrongly denied coverage and disclaimed any obligation to defend or indemnify 96-16 in the Kings County Action.

38. There is therefore an actual controversy of a justiciable nature between Plaintiff and Defendant as to whether Defendant is obligated to defend and indemnify Plaintiff in the Kings County Action under the terms of the Policy.

39. A judicial declaration that Defendant is obligated to defend and indemnify Plaintiff is necessary and appropriate at this time, including that: a) Penn-Star is obligated to pay those sums that Plaintiff becomes legally obligated to pay as damages in the Kings County Action; and b) Penn-Star has the duty to defend Plaintiff in the Kings County Action.

## COUNT TWO

### Recovery of Defense Costs

40. Plaintiff re-alleges and incorporates by reference the allegations set forth in all of the preceding paragraphs as if fully set forth herein.

41. Beginning no later than Plaintiff's demand for a defense in the Kings County Action, Defendant has been obligated to defend Plaintiff.

42. Despite the demand that Defendant provide Plaintiff with a defense in the Kings County Action, Defendant has refused to do so.

43. Defendant is accordingly liable for Plaintiff's defense costs in the Kings County Action beginning from October 19, 2020, the date of commencement of the Kings County Action, through the time, if any, that Defendant agrees to provide such defense, at the rate of

$650.00 an hour for attorney time, plus out-of-pocket costs and, pursuant to CPLR §§ 5001 and 5004, prejudgment interest accruing from the respective dates Plaintiff expended such attorney and paralegal time or incurred such out-of-pocket costs.

**WHEREFORE**, it is respectfully requested that the Court:

(a) Declare that Defendant is obligated to defend and indemnify Plaintiff in the Kings County Action; and

(b) Award compensatory damages in favor of Plaintiff in an amount to be determined at trial, but no less than $75,001.00;

(c) Award costs, interest, and attorney's fees;;

(d) Award such other and further relief as this Court may deem just and proper.

DATED: February 13, 2024
New York, New York

LAW OFFICE OF ALEXANDER SAKIN, LLC

_____
Alexander Sakin
5 West 37th St., Suite 601
New York, NY 10018
(917) 509-7573