USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__9/26/2025__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 96-16TH STREET, LLC, | 24-cv-1064 (MKV) |
| Plaintiff, | **OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |
| -against- | |
| PENN-STAR INSURANCE COMPANY, | |
| Defendant. | |

MARY KAY VYSKOCIL, United States District Judge:

Plaintiff 96-16th Street, LLC ("96-16th Street") filed this action against Defendant Penn-Star Insurance Company ("Penn-Star") seeking a declaration that Penn-Star has a duty to defend and indemnify Plaintiff in a personal injury action and recovery of defense costs [ECF No. 1]. Both parties argue that the relevant policy language is unambiguous and that there are no material disputes of fact, and each party seeks summary judgment on Plaintiff's claims [ECF Nos. 21, 22]. For the reasons set forth below, Defendant's motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

## I.    BACKGROUND

### A.  Facts[1]

#### 1.  The Project and the Underlying Injury Action

The material facts are undisputed. 96-16th Street, LLC ("96-16th Street") is the owner of a property located at 96-16th Street in Brooklyn, New York.[2] Pl 56.1 ¶¶ 1, 3; Def. 56.1 ¶ 3; Pl.

---

[1] The facts are taken from the evidence cited in the parties' Local Civil Rule 56.1 Statements, including the affidavits and declarations submitted in connection with the motion for summary judgment and the exhibits attached thereto [ECF Nos. 21-2 ("Def. 56.1"), 21-7 ("Contractor Agreement"), 21-11 ("Policy"), 25-2 ("Pl. 56.1"), 26-1 ("Def. Counter 56.1"), 27-1 ("Pl. Counter 56.1")]. The facts are undisputed unless otherwise indicated.

[2] Although the construction project took place in Brooklyn and, as stated below, the underlying injury action was brought in Kings County, any objection to venue has been waived. *See Concession Consultants, Inc. v. Mirisch*, 355

Counter 56.1 ¶ 3; Def. Counter 56.1 ¶¶ 1, 3.  There is no dispute that, in 2018, Plaintiff submitted, to the New York State Real Estate Finance Bureau, a Condominium Offering Plan for the construction of a new condominium at that property.  Def. 56.1 ¶¶ 4, 5; Pl. Counter 56.1 ¶¶ 4, 5. There is also no dispute that the New York State Real Estate Finance Bureau ultimately approved the Condominium Offering Plan on April 10, 2020, after construction had already begun.  *See* Pl 56.1 ¶ 5; Def. Counter 56.1 ¶ 5.  The parties agree that Plaintiff later sold some of the residential units in the condominium.  Def. 56.1 ¶ 22; Pl. Counter 56.1 ¶ 22.

There is no dispute that, in the interim, in 2019, Plaintiff retained Hyper Structure Corp. ("Hyper Structure") as a general contractor for the construction project.  Pl. 56. ¶ 3; Def. 56.1 ¶ 13; Pl. Counter 56.1 ¶ 13; Def. Counter 56.1 ¶ 3.  Plaintiff's contract with Hyper Structure expressly contemplates Hyper Structure "using a subcontractor or sub-subcontractor to perform" work on the project, provided that Hyper Structure first supply Plaintiff with proof that the subcontractor had complied with certain insurance requirements, among other conditions [ECF No. 21-7 (the "Contractor Agreement") § H.10].  *See* Def. 56.1 ¶ 18; Pl. Counter 56.1 ¶ 18. Moreover, there is no dispute that the Contractor Agreement also contains a provision directing Hyper Structure to disburse funds received from Plaintiff to subcontractors.  Def. 56.1 ¶¶ 19, 20; Pl. Counter 56.1 ¶¶ 19, 20; Contractor Agreement § D(iv); *see id.* § F(iii).

There is no dispute that Hyper Structure retained various subcontractors, including Atlas NY Construction Corp. ("Atlas"), to work on the project.  Pl. 56.1 ¶ 4; Def. 56.1 ¶ 21; Pl. Counter 56.1 ¶ 21; Def. Counter 56.1 ¶ 4.

It is undisputed that, in October 2020, Sukhwinder Singh filed a lawsuit against 96-16th Street and Hyper Structure in the Supreme Court of New York, Kings County (the "Injury Action")

---

F.2d 369, 371 (2d Cir. 1966) ("[A] district judge should not, in the absence of extraordinary circumstances, impose his choice of forum upon the parties by deciding on his own motion that there was a lack of proper venue.").

[ECF No. 21-4].  Pl. 56.1 ¶ 6; Def. 56.1 ¶ 25; Pl. Counter 56.1 ¶ 25; Def. Counter 56.1 ¶ 6.  There is no dispute that the complaint in the Injury Action alleged that, in March 2020, Singh was an employee of Atlas (which, as noted above, had been retained as a subcontractor by Hyper Structure to work on the project).  Pl. 56.1 ¶¶ 4, 6; Def. 56.1 ¶¶ 21, 23; Pl. Counter 56.1 ¶¶ 21, 23; Def. Counter 56.1 ¶¶ 4, 6.  As both sides agree, the complaint in the Injury Action further alleged that, in the course of his employment in March 2020, Singh fell and sustained injuries when the scaffold on which he was standing collapsed.  Pl. 56.1 ¶ 6; Def. 56.1 ¶ 24; Pl. Counter 56.1 ¶ 24; Def. Counter 56.1 ¶¶ 4, 6.

## 2.  The Policy

The parties agree that Penn-Star Insurance Company ("Penn-Star") issued to 96-16th Street a policy for the period of January 10, 2020 to July 10, 2020 [ECF No. 21-11 (the "Policy")]. Def. 56.1 ¶ 32; Pl. Counter 56.1 ¶ 32.  The parties also agree that the Policy covers "damages because of 'bodily injury,'" among other things, subject to certain conditions and exclusions.  Policy, New York Changes – Commercial General Liability Coverage Form § A.1.a; *see* Pl. 56.1 ¶ 8; Def. 56.1 ¶ 33; Pl. Counter 56.1 ¶ 33; Def. Counter 56.1 ¶ 8.

There are three exclusions in the Policy relevant to this case.  In particular, there is no dispute that the Policy contains an exclusion titled: "Exclusion – Injury to Employees, Workers, or Contracted Persons of Insureds or Contracted Organizations" [ECF No. 21-11 at 67 (the "Contracted Persons Exclusion")].  Def. 56.1 ¶ 35; Pl. Counter 56.1 ¶ 35.  The parties agree that the Contracted Persons Exclusion states, in pertinent part, that it excludes from coverage "Bodily injury" to various workers, including:

> (3) Any person performing work that any insured has the authority to control or supervise, whether that person is an "employee", "temporary worker", or "volunteer worker" of any insured or any other person or organization;

(4) Any person who is employed by, leased to or contracted with any organization
that: . . .

      (b) Contracted with others on any insured's behalf for services . . . .

Contracted Persons Exclusion §§ A(3), A(4)(b); Def. 56.1 ¶ 35; Pl. Counter 56.1 ¶ 35.

There is no dispute that the Policy also contains an exclusion titled: "Limited Exclusion –
Condominium, Cooperative, Town House, Row House, Tract House, Mixed Use or Conversion"
[ECF No. 21-11 at 68–69 (the "Condominium Exclusion")].  Def. 56.1 ¶ 37; Pl. Counter 56.1 ¶
37.  The parties agree that the Condominium Exclusion states, in pertinent part, that the "insurance
does not apply" to "bodily injury . . . arising out of" the insured's "work" if it "is part of" a "newly
built" "condominium."  Condominium Exclusion § I.A (internal quotation marks omitted); Def.
56.1 ¶ 37; Pl. Counter 56.1 ¶ 37.  The term condominium is defined as "a form of residential
property ownership in which each owner holds title to his/her individual unit . . . .," and the term
newly built "means a structure never previously occupied."  Condominium Exclusion §§ IV.C,
IV.H; Def. 56.1 ¶ 37; Pl. Counter 56.1 ¶ 37.

There is no dispute that the Policy also contains an exclusion titled: "Independent
Contractors – Conditional Exclusion" (the "Independent Contractors Exclusion") [ECF No. 21-11
(the Policy) at 76].  Def. 56.1 ¶ 36; Pl. Counter 56.1 ¶ 36.  The parties agree that the Independent
Contractors Exclusion provides:

> This insurance does not apply to "bodily injury" . . . arising out of operations
> performed for [the insured] or on [its] behalf, by any independent contractor or sub-
> contractor of [the insured's], unless such contractor has in force [certain insurance].

Independent Contractors Exclusion; Def. 56.1 ¶ 36; Pl. Counter 56.1 ¶ 36.

### 3.  The Coverage Dispute

There is no dispute that, shortly after learning it was a defendant in a lawsuit, 96-16th Street
provided notice of the Injury Action to Penn-Star and demanded coverage under the Policy.  Pl.

56.1 ¶ 7; Def. 56.1 ¶ 39; Pl. Counter 56.1 ¶ 39; Def. Counter 56.1 ¶ 7.  There is also no dispute that Penn-Star denied coverage under the Policy, and disclaimed any obligation to defend or indemnify 96-16th Street, citing the Contracted Persons Exclusion, the Independent Contractors Exclusion, and the Condominium Exclusion.  Pl. 56.1 ¶ 11; Def. 56.1 ¶¶ 41–44; Pl. Counter 56.1 ¶¶ 41–44; Def. Counter 56.1 ¶ 11.

## B.  Procedural History

Plaintiff initiated this action by filing a complaint [ECF No. 1 ("Cmpl.")].   The Complaint asserts (1) a claim for a declaratory judgment that Penn-Star has a duty to defend and indemnify Plaintiff in the Injury Action, and (2) a claim for recovery of defense costs.  Cmpl. ¶¶ 34–43.  Penn-Star filed an answer, and the parties conducted discovery [ECF Nos. 10, 15, 18].

After they completed discovery, both parties filed motions for summary judgment [ECF Nos. 21, 21-1 ("Def. MSJ"), 21-2–21-16, 22, 23, 24 ("Pl. MSJ"), 25].  Both parties agree that there are no disputes of material fact and that the language of the Policy is clear and unambiguous.  *See* Def. MSJ at 5, 6, 9–24; Pl. MSJ at 3, 4–9.

Penn-Star argues that it properly disclaimed coverage under the Policy, and, therefore, is entitled to summary judgment on Plaintiff's claims, because the Contracted Persons Exclusion, the Independent Contractors Exclusion, and the Condominium Exclusion plainly bar coverage for the Injury Action.  *See* Def. MSJ at 9.  Plaintiff, on the other hand, argues that the denial of coverage was "plainly wrongful" because, Plaintiff contends, none of the cited exclusions applies.  Pl. MSJ at 1.  Each party filed an opposition to the other party's motion for summary judgment, and a reply brief in further support of its own motion, rehashing the same arguments about the applicability of the exclusions [ECF Nos. 26, 27, 31, 32].

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In contract case, "if the court determines that 'the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms, and those terms may be the basis for summary judgment.'"  *American Home Assur. Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 316 (2d Cir. 2006) (quoting *Dusé v. Int'l Bus. Machs. Corp.*, 252 F.3d 151, 158 (2d Cir. 2001)).  Here, as noted above, both parties agree that there is no genuine dispute as to any material fact and that the language of the Policy is clear and unambiguous.  *See* Def. MSJ at 5, 6, 9–24; Pl. MSJ at 3, 4–9.

## III.    DISCUSSION

Under New York law,[3] it is fundamental that the duty to defend is broader than the duty to indemnify.  *See Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310, 476 N.E.2d 272 (1984); *Automobile Insurance Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137, 818 N.Y.S.2d 176, 850 N.E.2d 1152, 1155 (2006) (the "duty to defend is exceedingly broad") (internal quotation marks omitted). An insurer's duty to defend its insured arises when the allegations in a complaint against the insured state a claim that arguably could fall within the scope of the insurance policy.  *Fieldston Prop. Owners Association, Inc. v. Hermitage Insurance Co.*, 16 N.Y.3d 257, 264, 920 N.Y.S.2d 763, 945 N.E.2d 1013 (2011); *see generally* 1 Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes* § 5.02[b][1] (22nd ed. 2025).  The duty to indemnify applies only to claims that actually are covered.  *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005); *Frontier Insulation Contractors, Inc. v. Merchants Mutual Insurance Co.*, 91 N.Y.2d 169, 178,

---

[3] The parties agree that New York law governs this dispute.  *See* Def. MSJ at 5; Pl. MSJ at 4.

667 N.Y.S.2d 982, 690 N.E.2d 866, 870 (1997).

While broad, "an insurer's duty to defend is limited absolutely by the scope of the coverage purchased." *Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co.*, 363 F.3d 137, 144 (2d Cir. 2004); *see Allstate Ins. Co. v. Zuk*, 78 N.Y.2d 41, 45, 571 N.Y.S.2d 429, 574 N.E.2d 1035 (1991). Thus, an insurer has no obligation to defend if the insurer can show that the action against its insured falls entirely within a policy exclusion. *Brooklyn L. Sch. v. Aetna Cas. & Sur. Co.*, 849 F.2d 788, 789 (2d Cir. 1988); *accord Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325, 320 N.E.2d 619, 621 (1974). The "insurer must establish that the exclusion is stated in clear and unmistakable language, is subject to no other reasonable interpretation and applies in the particular case." *Throgs Neck Bagels, Inc. v. GA Ins. Co. of New York*, 241 A.D.2d 66, 71, 671 N.Y.S.2d 66, 69 (1st Dep't 1998); *accord Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006). Pertinent here, moreover, "if any one exclusion applies there can be no coverage." *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 5 N.Y.3d 467, 471, 839 N.E.2d 886, 888 (2005) (quoting *Monteleone v. Crow Const. Co.*, 242 A.D.2d 135, 141, 673 N.Y.S.2d 408, 411 (1st Dep't 1998)).

Penn-Star has no duty to defend or indemnify Plaintiff with respect to the Injury Action because, as both parties agree, the language of the Contracted Persons Exclusion is clear and unambiguous, and, as the undisputed facts establish, the Injury Action falls entirely within the Contracted Persons Exclusion. *See Throgs Neck Bagels, Inc.*, 241 A.D.2d at 71, 671 N.Y.S.2d at 69; *Int'l Paper Co.*, 35 N.Y.2d at 325, 320 N.E.2d at 621. As explained above, subsection (4)(b) of the Contracted Persons Exclusion excludes from coverage "[b]odily injury" to "[a]ny person who is employed by . . . any organization that . . . [c]ontracted with others on any insured's behalf for services . . . ." Contracted Persons Exclusion § A(4)(b); Def. 56.1 ¶ 35; Pl. Counter 56.1 ¶ 35.

This language clearly contemplates someone other than the insured (*i.e.*, a contractor) retaining yet another organization (*i.e.*, a subcontractor) to perform work for the insured and bars coverage for injuries to the employees of any such organization contracted to work on behalf of the insured. Here, there is no dispute that Singh alleges he was injured while he was employed by Atlas, which was retained as a subcontractor by Plaintiff's general contractor, Hyper Structure, to perform work on Plaintiff's project. *See* Pl. 56.1 ¶¶ 4, 6; Def. 56.1 ¶¶ 21, 23, 24; Pl. Counter 56.1 ¶¶ 21, 23, 24; Def. Counter 56.1 ¶¶ 4, 6. As such, the Contracted Persons Exclusion applies.

Plaintiff's argument that the Contracted Persons Exclusion does not apply is that, Plaintiff asserts, "Atlas never contracted with Hyper Structure 'on behalf of'" Plaintiff. Pl. MSJ at 7. This argument rests on a semantic game in which Plaintiff contends that, while there is no dispute that Hyper Structure contracted with Atlas on behalf of Plaintiff, nevertheless, according to Plaintiff, Atlas did not contract with Hyper Structure on behalf of Plaintiff. *See* Pl. MSJ at 6–7. Specifically, Plaintiff argues that the Contracted Persons Exclusion does not bar coverage for injuries to employees of Atlas because Atlas was not Plaintiff's "agent." Pl. MSJ at 7.

The Contracted Persons Exclusion plainly is not limited to employees of an agent of the insured. Rather, the language of the Contracted Persons Exclusion bars coverage for injuries to any employee of "any organization" that has been "[c]ontracted . . . any insured's behalf . . . ." Contracted Persons Exclusion § A(4)(b). Put another way, the Contracted Persons Exclusion bars coverage for employees of an organization that is contracted for the benefit, or in the interest, of the insured.[4] Here, Hyper Structure contracted with Atlas on behalf of, or for the benefit of,

---

[4] *See Merriam-Webster Online*, https://www.merriam-webster.com/dictionary/behalf (defining "behalf" as "interest, benefit" and defining the phrase "on behalf of *or* in behalf of" as "in the interest of" or, also, "as a representative of") (emphasis in original). Plaintiff cites *Garner's Dictionary of Legal Usage* as authority that "on behalf of" means "as 'the agent or representative of.'" Pl. MSJ at 7. However, Plaintiff's own source acknowledges that while the "phrases in behalf of and on behalf of have traditionally signified different things," with "in behalf of" meaning "in the interest or for the benefit" of and "on behalf of" meaning "as the agent or representative" of, "[i]n current usage, the distinction

Plaintiff.  *See* Pl. 56.1 ¶ 4; Def. 56.1 ¶ 21.  Thus, because Singh was an employee of Atlas, which contracted which Hyper Structure to work for Plaintiff, the Contracted Persons Exclusion bars coverage for Singh's injuries.

A number of courts have interpreted similar exclusions the same way.  *See Campoverde v. Fabian Builders, LLC*, 83 A.D.3d 986, 988, 922 N.Y.S.2d 435 (2nd Dep't 2011).  In particular, a court interpreting a nearly identical "Contracted Persons Exclusion" expressly reasoned that where, as here, the insured had hired a contractor which, in turn, hired a subcontractor, the subcontractor had "contracted with" the contractor "*on [the insured's] behalf* for services." *Northfield Ins. Co. v. Omni Build, Inc.*, 2015 WL 427913, at *2 (E.D.N.Y. Feb. 2, 2015) (emphasis added) (collecting cases).  That is the situation here: Atlas and Hyper Structure contracted to perform services on Plaintiff's behalf.  *See id.*; *see also U.S. Underwriters Ins. Co. v. Beckford*, 1998 WL 23754, at *3 (E.D.N.Y. Jan. 20, 1998) ("The language of the . . .  Exclusion clearly contemplates that a contractor could be retained by a party other than the insured on the insured's behalf, and that an injury to that contractor or its employee would fall within the scope of the exclusion"); *Northfield Ins. Co. v. ABC Constr. & Home Improvement, Inc.*, No. 2020 WL 2616306, at *5 (E.D.N.Y. May 4, 2020) ("the plain meaning of the 'Contracted Persons' exclusion . . . is that the policy does not provide coverage for . . . an employee of any contractor *hired by or for* any insured") (emphasis added), *report and recommendation adopted*, 2020 WL 2616214 (E.D.N.Y. May 22, 2020).

Plaintiff argues that Atlas was not contracting "on behalf of" Plaintiff because Plaintiff "never directed or requested Hyper Structure to enter into a contract with Atlas" and was not "even aware that Hyper Structure had retained Atlas."  Pl. MSJ at 7.  Plaintiff adds that it "was not aware

---

is seldom followed," and "*on behalf of is much more common in both senses*."  Bryan A. Garner, *Garner's Modern English Usage* 129 (5th ed. 2022) (emphasis added).

of Singh until he filed the action that triggered this dispute, let alone ever employed him." Pl. MSJ at 7. This argument is unpersuasive.

It is immaterial to Plaintiff's insurance coverage dispute with Penn-Star whether Plaintiff directed Hyper Structure to contract with Atlas. There is no dispute that Plaintiff's contract with Hyper Structure expressly contemplates Hyper Structure contracting with "a subcontractor or sub-subcontractor to perform" work on Plaintiff's project. Contractor Agreement § H.10; *see* Def. 56.1 ¶ 18; Pl. Counter 56.1 ¶ 18. Indeed, as both sides agree, the Contractor Agreement contains a provision directing Hyper Structure to disburse funds received from Plaintiff to subcontractors. Def. 56.1 ¶¶ 19, 20; Pl. Counter 56.1 ¶¶ 19, 20; Contractor Agreement § D(iv); *see id.* § F(iii). If Hyper Structure failed, in some way, to comply with its obligations to Plaintiff when Hyper Structure hired Atlas as a subcontractor, Plaintiff may have a claim for breach of contract against Hyper Structure, but any such breach by Hyper Structure would not change the scope of the Policy that Penn-Star issued to Plaintiff.[5]

In light of the plain language of the relevant provision, and the authorities interpreting similar language, the only "reasonable interpretation" of the Contracted Person Exclusion is that it bars coverage for injuries to an employee of a subcontractor that was hired, on behalf the insured, to work on the insured's project. *Throgs Neck Bagels, Inc.*, 241 A.D.2d at 71, 671 N.Y.S.2d at 69; *see Northfield Ins. Co.*, 2015 WL 427913, at *2; *U.S. Underwriters Ins. Co.*, 1998 WL 23754, at *3; *see also U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 179

---

[5] The broad intended scope of the Contracted Persons Exclusion is supported by the text of subsection (3). *See United States v. Lennox Metal Mfg. Co.*, 225 F.2d 302, 311 (2d Cir. 1955) ("in interpreting contractual language . . . . text should always be read in its context"). Subsection (3) excludes from coverage liability for bodily injury to "*[a]ny person* performing work that any insured has the authority to control or supervise, whether that person is an 'employee' . . . of any insured or *any other* person or organization." Contracted Persons Exclusion § A(3). The parties disagree about whether Plaintiff had the authority to control or supervise Singh, and the Court need not wade into those arguments. The Court simply notes that, reading subsection (3) and subsection (4)(b) together, it is clear that the point of the Contracted Persons Exclusion is to exclude coverage for workplace injuries.

(S.D.N.Y. 2003), *aff'd*, 88 F. App'x 441 (2d Cir. 2004). The parties agree that Hyper Structure did, in fact, contract with Atlas, on behalf of Plaintiff, to perform work on Plaintiff's project. Pl. 56.1 ¶ 4; Def. 56.1 ¶ 21; Pl. Counter 56.1 ¶ 21; Def. Counter 56.1 ¶ 4. The parties also agree that Atlas, in turn, employed Singh to perform work on Plaintiff's project. *See* Pl. 56.1 ¶ 6; Def. 56.1 ¶¶ 23, 24; Pl. Counter 56.1 ¶¶ 23, 24; Def. Counter 56.1 ¶ 6. As both sides agree, in the Injury Action, Singh alleges that he was injured while employed by Atlas and working on Plaintiff's project. Pl. 56.1 ¶ 6; Def. 56.1 ¶ 24; Pl. Counter 56.1 ¶ 24; Def. Counter 56.1 ¶¶ 4, 6. These undisputed facts establish that the Injury Action falls entirely within the Contracted Persons Exclusion. *See Throgs Neck Bagels, Inc.*, 241 A.D.2d at 71, 671 N.Y.S.2d at 69; *Int'l Paper Co.*, 35 N.Y.2d at 325, 320 N.E.2d at 621.

As such, Penn-Star has no duty to defend or indemnify Plaintiff in connection with the Injury Action. *See id.*; *Seaboard Sur. Co.*, 64 N.Y.2d at 310. Moreover, since "one exclusion applies there can be no coverage," and the Court need not decide whether the Condominium Exclusion or the Independent Contractors Exclusion also bars coverage. *Maroney*, 5 N.Y.3d at 471, 839 N.E.2d at 888.

The Court simply notes that the Condominium Exclusion clearly appears to bar coverage. Plaintiff's sole argument that the Condominium Exclusion does not apply is that the New York State Real Estate Finance Bureau had not yet approved the Condominium Offering Plan when Singh was allegedly injured. *See* Pl. MSJ at 8–9. However, the Condominium Exclusion is not defined in terms of approval of a building as a condominium by a governing body. Rather, the Condominium Exclusion excludes coverage for bodily injury arising out of the insured's "work" if it "is part of" a newly built "condominium." Condominium Exclusion § I.A (internal quotation marks omitted); Def. 56.1 ¶ 37; Pl. Counter 56.1 ¶ 37. The term condominium is defined simply

as "a form of residential property ownership in which each owner holds title to his/her individual unit . . . . ."  Condominium Exclusion § IV.C; Def. 56.1 ¶ 37; Pl. Counter 56.1 ¶ 37.  Here, clearly, Plaintiff's "work" had already begun when Singh was allegedly injured, and the parties expressly agree that the result of that work was a newly built condominium.  *See* Def. 56.1 ¶¶ 4, 5; Pl. Counter 56.1 ¶¶ 4, 5.  Indeed, there is no dispute that Plaintiff has sold some of the residential units in the condominium.  Def. 56.1 ¶ 22; Pl. Counter 56.1 ¶ 22.  As such, it seems clear that the Condominium Exclusion bars coverage for the Injury Action.

## IV.    CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment [ECF No. 21] is GRANTED, and Plaintiff's motion for summary judgment [ECF No. 22] is DENIED.  The Clerk of Court respectfully is requested to terminate docket entries 21 and 22, to enter judgment in favor of Defendant Penn-Star Insurance Company, and to close this case.

**SO ORDERED.**


**Date: September 26, 2025**                **MARY KAY VYSKOCIL**
       **New York, NY**                         **United States District Judge**